## Case No. 10,691.

### PALMER v. FISKE et al.

[2 Curt. 14.] 1

Circuit Court, D. Maine. Sept., 1854.

NEW TRIAL — EXCESSIVE DAMAGES — MISTAKE OF JURY—MISTAKE BY WITNESS—NEWLY-DISCOVERED EVIDENCE.

1. A verdict in an action on the case for an injury to the plaintiff's mill, by causing the water to flow back thereon, will not be set aside for excessive damages, unless the court can see that the jury fell into some important mistake of computation, or departed from some rule of law given to them for their guidance, or made deductions from the evidence plainly not warranted by it.
[Cited in Hunt v. Pooke, Case No. 6,895; Fuller v. Fletcher, 6 Fed. 130.]

2. Errors of judgment of the engineer appointed by the defendant, in not delineating on the plan certain objects which might have tended to support the defence, do not afford ground for a new trial.

3. Evidence must be not only in fact newly discovered and not cumulative, but the party

1 [Reported by Hon. B. R. Curtis, Circuit Justice.]

must have used due diligence to discover it before the trial, to induce the court to grant a new trial.
[Cited in Plymouth v. Russell Mills, 7 Allen 441.]

[Action of trespass on the case by Courtland Palmer against John Fiske and others.]

Evans & Paine, for the motion.
Shepley & Rowe, contra.

CURTIS, Circuit Justice. This was an action on the case for unlawfully obstructing the waters of the Penobscot river, to the injury of the mills of the plaintiff. It appeared at the trial, that some of the defendants were interested in mills on that river, which, before the time of the alleged nuisance, had been operated by means of a dam, whose effect was not complained of. This dam having been destroyed by a flood, the defendants built another in its place, and the plaintiff alleged that this new dam so obstructed the water, as to be injurious to his mills above. The jury found a verdict for the plaintiff, and assessed the damages at the sum of $10,650. Upon the coming in of the verdict, the defendants moved for a new trial, because the damages were excessive; and, subsequently, for newly discovered evidence. These grounds are distinct from each other, and must be separately considered. And first as to the excessive damages. Under the ruling of the court, damages were to be assessed by the jury for the injury suffered by the plaintiff during the year 1849; and as it appeared that six saws were, during that year, under lease to Gulliver & Gilman, the jury were instructed, that no damages could be recovered on account of obstruction of those parts of the mills, the declaration not being so framed as to enable the plaintiff to recover for an injury to his reversion. It appeared that the mills contained sixteen single saws, two gangs, equal to four saws, and small machinery, reckoned by the only witness who spoke upon this subject, as equal to four saws. The whole was equal, according to this computation, to twenty-four saws; so that striking out the six which were under lease, the machinery in the hands of the plaintiff, for the obstruction of which he could recover damages in this action, was equal to eighteen saws.

The important testimony, bearing directly on the question of damages, came from Roberts, Mayo, and Dean. Roberts hired the entire mills in 1848, and paid a rent of $20,000 for that year. He testified, in substance, that during the year 1848, he was so much troubled by backwater, that he hired other mills in the spring of 1849; that the backwater was the cause of his declining to hire these mills in 1849; that during that year a sluice way was made for carrying off the edgings, and this relieved the difficulty in part, and that he returned to these mills in 1850, and hired them for $14,000. That this difference between $14,000 and $20,000 was

principally owing to backwater. Mayo, who was the plaintiff's agent for managing the mills, testified that in 1848 he got about $20,000 net rent for the mills, and in 1849 about $4,000; that in 1850, after building the sluice way and making some other improvements, he rented the mills for $14,000; and that he knew of no cause for this difference except backwater. Dean, the agent of the Stillwater Canal Company, whose locks are in the immediate neighborhood of these mills, and who said he was well acquainted with them, gave an opinion that the annual value of each saw was diminished by backwater $200 per annum. It was argued at the trial, on behalf of the plaintiff, that as he got $20,000 for the mills in 1848, and only $4,000 in 1849, his damages were $16,000. On the other hand, as the mills rented in 1850 for $14,000, it was urged that the damages for 1849 could not be greater than $6,000, even if the diminution of rent was attributable solely to the act of the defendants, which was denied. It is manifest the jury did not adopt either of these views, for they allowed the plaintiff something more than $6,000, exclusive of interest, and much less than $16,000. It is clear, also, that they did not adopt the opinion of Dean, for they have fixed the annual injury to each saw in the possession of the plaintiff at a much higher sum than $200.

Now what I have to determine upon this motion is, not whether I should have found this verdict, but whether I can clearly see that the jury must have fallen into some important mistake in computing the damages, or must have departed from some rule of law, or have made deductions from the evidence, which are plainly not warranted by it. To assess the damages in this case, was not only within the exclusive province of the jury, but it was a matter to be deduced by them from evidence, which, when carefully examined, did not afford any precise data upon which to found a computation. Take, for instance, the view presented by the plaintiff, that he was entitled to $16,000, because he got $20,000 in 1848, and only $4,000 in 1849, for the use of these mills. It was for the jury to consider whether this difference was attributable solely to the act of the defendants, or partly to other causes, such as the scarcity of logs, the state of the water, and the consequent difficulty of getting logs to the mills at the usual times, as well as the obstructions of the water below the plaintiff's mills, by other causes than the defendants' dam. Upon the evidence in the case, it was certainly competent for the jury to find, as they have found, that the mills were not lessened in value $16,000 in 1849, by the tort of the defendants. On the other hand, it was to be considered by them whether $14,000 for which the mills were rented in 1850, was the true annual value in 1849, notwithstanding the backwater, and that if the plaintiff got but $4,000 that year, it was not attributable to the defendants.

They might have come to that conclusion upon the evidence; but I am not prepared to say they could come to no other conclusion consistently with the evidence. In 1849, expensive improvements were made; the railway and sluice were built, and great quantities of edging were cleared out and obstructions removed. It was this altered state of things which, as Roberts testified, induced him to hire the mills in 1850, and pay for their use $14,000, and the jury may therefore have considered, that the value in 1850 was not a fair criterion by which to test the value in 1849. They may have thought that in 1849 the plaintiff's mills were choked up by edgings and saw dust, deposited by reason of backwater caused by the defendants, and that the $4,000 which plaintiff actually got for the use of the mills that year was all they were worth; that it was necessary to make large expenditures, and new permanent works to restore their value even in part, and that the increased rent of $14,000 obtained in 1850 was fairly attributable to an increased value of the mills by reason of these expenditures. So, too, they may have thought the opinion of Dean, that the annual value of each saw was diminished by backwater $200, was not a sound opinion; that it was but an opinion, which they were not bound to adopt; and that the actual diminution of rents was a fact of greater weight and more to be regarded than any opinion. It is impossible for me to know what view was actually taken by the jury of the evidence; but to set aside their verdict I must be able to see clearly that no view, consistent with the evidence, could have been adopted by them, in rendering this verdict; and this I do not see. There was evidence tending to show that the damages were somewhere from $6,000 to $16,000; there was other evidence tending to show that the damages did not exceed $4,000; the jury have found them, together with about three years' interest, to be $10,650. They were instructed to strike out the six saws let to Gulliver & Gilman, and allow such damages as would compensate the plaintiff for the diminution in the annual value of the residue of the mill in 1849, occasioned by any backwater unlawfully raised by the defendants. This instruction is not objected to. In a matter so indeterminate, and so necessarily dependent on the judgment of the jury, and where I cannot say they had no evidence on which to rest their conclusion, or from which they might have fairly deduced the sum they fixed, I cannot disturb their verdict, though it is for a larger sum than my judgment would have led me to find.

The motion for a new trial for newly discovered evidence rests upon several distinct grounds. The first may be stated, generally, as follows: In preparation for the trial, the defendants allege, that they employed an engineer to make a plan of the river, and lay down on it all material points and objects, which in his judgment could have any bearing on the case. He made a plan which was

used at the trial. It is now alleged that, through an error of judgment, he failed to lay down on his plan certain obstacles to the passage of the water, which, if they had been properly delineated, would have had a tendency to prove that the state of the water at the plaintiff's mill was not attributable to the defendants' dam.

I do not think this can be brought within the rules as to newly discovered evidence. In the first place the objects were in existence, and must have been seen by any one who examined the river, as the defendants' engineer did, just before the trial. It is not, that the objects themselves are newly discovered, but that their bearing and importance in the cause have become differently appreciated. But this cannot entitle a party to a new trial. It is urged that having employed a skillful surveyor and given him proper instructions, if he failed to exhibit on the plan important facts, the defendants are in no fault and ought not to suffer. But it must be remembered that the bearing and effect of these objects upon the case is matter of opinion and judgment; that whether it would be for the interest of the defendants to exhibit them was also a matter of opinion and judgment; that the defendants chose to rely in all such particulars upon the judgment of the engineer whom they employed. They had the benefit of his honest judgment, and acted on it. It is too late for them now to say he judged unwisely. Suppose counsel, having the means of proving a fact, judges it to be immaterial, or not useful to his client, and therefore does not exhibit the evidence of it. No one has supposed his client could have a new trial because it turns out that he was mistaken. Besides, this evidence, if admitted, would be clearly cumulative. There was much evidence in the case having the same tendency, and one of the principal grounds of defence was rested on it. Verdicts are not set aside, to let in even newly discovered evidence, the only effect of which would be, to strengthen an argument founded upon evidence which was submitted to the jury. The testimony of Cummings and Heald is also relied on. No explanation is given why their testimony or depositions were not produced at the trial. In May last, they resided in Michigan: but when they removed from Orono, where they had previously lived, does not appear. For aught that is shown, they were within reach of the process of the court at the time of the trial. They used a part of the saws in the plaintiff's mill in 1849. Very slight inquiry would have informed the defendants of this fact before the trial, if some of them did not know it. If they were then residing in Orono, they were in the immediate vicinity of some of the defendants. If they had then removed to Michigan, there could have been no difficulty in addressing them and making the necessary inquiries, and learning from them what they could testify. One of the defendants has made affidavit that their testimony is newly discovered. When and how it was discovered, and whether the defendants, or some of them, did not know before the trial, all that put them on inquiry after the trial, is not stated. The circumstances are very strong to show that they did; and that though it is doubtless true, that their evidence was in fact discovered after the trial, yet with the use of due diligence it might have been had at the trial. But if this were otherwise, their evidence is merely cumulative or not material. So far as it has a tendency to show that 1849 was a bad year for mills on that river, or that other causes than the defendants' dam affected the value of the plaintiff's mill in that year, their testimony is cumulative. They speak to facts much relied on by the defendants at the trial, and concerning which evidence was offered. So far as their depositions relate to the terms on which they had the use of a part of the saws, it is not in conflict with the evidence of Mayo. They say that under a verbal license from Mayo they used as many of the saws as they thought fit, up to September, 1849, and during the residue of the year, agreed to use more saws, paying so much a thousand for what they sawed. They do not say that Mayo got more than $4,000 from the mill that year, nor that the income did not depend on the amount sawed, nor that they had such a lease of the mills as to turn the plaintiff's estate into a mere reversionary interest, or that his claim should be, for forcing him to let at a reduced rent. On the contrary, they confirm the statement of Mayo, that the income depended on the amount sawed, and that consequently the damage from backwater was suffered by the plaintiff, and not by these persons who used the saws under the parol license of the character they describe.

These are the principal grounds of the motion; some other less important matters, such as the clause in the lease to Roberts concerning edgings, which it was admitted was at the trial and not read by the defendants, and which would have been of very slight importance if read, need not be noticed in detail. The result is, that the motion for a new trial is denied, and judgment is to be rendered on the verdict.